UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT A. ZDROIK,

    *Plaintiff,*

    *v.*

MARLA REIMANN, LINCOLN COUNTY,
TINA HOSE, CORRECTIONAL HEALTHCARE
COMPANIES, LLC, BONNIE CRABTREE,
DR. DANIEL HEKMAN, ADVANCED
CORRECTIONAL HEALTHCARE, INC.,
SHAUNE HOBAN, DR. PRAPTI KUBER,
AND DR. RICHARD FULLER,

    *Defendants.*

Case No. 2:18-cv-244

---

## FIRST AMENDED COMPLAINT

Plaintiff Robert A. Zdroik, by his attorneys, Strang Bradley, LLC, for his complaint against Defendants Marla Reimann, Lincoln County, Tina Hose, Correctional Healthcare Companies, LLC, Bonnie Crabtree, Dr. Daniel Hekman, Advanced Correctional Healthcare, Inc., Shaune Hoban, Dr. Prapti Kuber, and Dr. Richard Fuller, state as follows:

### Introduction

1.     This is a lawsuit brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Robert Zdroik's constitutional right to be free from deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution. In the alternative, Plaintiff further alleges state-law causes of action based on negligence.

2. On July 11, 2017, Zdroik suffered an acute ischemic stroke while in custody at Dodge Correctional Institution after repeated requests for medical attention related to complications from his prior open-heart surgery.

3. Plaintiff seeks actual or compensatory damages against Defendants, and because they acted recklessly and/or with callous indifference to the federally protected rights of Plaintiff, punitive damages, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and § 1343(a)(3) (42 U.S.C. §1983 jurisdiction). This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). All defendants reside in Wisconsin and at least one defendant resides within this judicial district. A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

## Parties

6. Plaintiff Robert A. Zdroik is an adult who resides in Merrill, Wisconsin. At all relevant times, he was an inmate in the Lincoln County Jail, Vilas County Jail and Dodge Correctional Institution.

7. Defendant Lincoln County is a political subdivision of the state of Wisconsin and is and/or was the employer of Defendant Marla Reimann and is

2

required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

8. At all times relevant to this action, Defendant Reimann was a registered nurse in the state of Wisconsin, acting in the course and scope of her employment with Lincoln County to provide medical care to inmates at Lincoln County Jail and acting under color of state law.

9. Defendant Correctional Healthcare Companies, LLC, ("CHC") is a corporation organized and existing under the laws of the state of Tennessee with its principal place of business at 1283 Murfreesboro Pike, Suite 500, Nashville, TN 37217 and a registered agent for a service in Wisconsin of Corporate Creations Network Inc., 4650 W. Spencer St., Appleton, WI 54914. On information and belief, at all times relevant to this action, Defendant CHC provided health care services at the Lincoln County Jail in Merrill, Wisconsin under a contract with Lincoln County.

10. At all times relevant to this action, Defendant Tina Hose was a registered nurse in the state of Wisconsin, acting in the course and scope of her employment with Defendant CHC to provide medical care to inmates at the Lincoln County Jail and acting under color of state law.

11. Defendant Advanced Correctional Healthcare, Inc. ("ACH") is a corporation organized and existing under the laws of the state of Illinois with its principal place of business at 3922 West Baring Trace, Peoria, IL 61615 and a registered agent for a service in Wisconsin of CT Corporate Systems, Inc., 301 S. Bedford St., Suite 1, Madison WI 53703. On information and belief, at all times relevant to this action,

3

Defendant ACH provided health care services at the Vilas County Jail in Eagle River, Wisconsin under a contract with Vilas County.

12. At all times relevant to this action, Defendant Bonnie Crabtree was a registered nurse in the state of Wisconsin, acting in the course and scope of her employment with Defendant ACH to provide medical care to inmates at the Vilas County Jail and acting under color of state law.

13. At all times relevant to this action, Dr. Daniel Hekman was a doctor licensed to practice medicine in the state of Wisconsin, acting in the course and scope of his employment with Defendant ACH to provide medical care to inmates at the Vilas County Jail and acting under color of state law.

14. At all times relevant to this action, Shaune Hoban was a registered nurse in the state of Wisconsin, acting in the course and scope of her employment with the State of Wisconsin to provide medical care to inmates at Dodge Correctional Institution and acting under color of state law.

15. At all times relevant to this action, Dr. Prapti Kuber was a doctor licensed to practice medicine in the state of Wisconsin, acting in the course and scope of her employment with the State of Wisconsin to provide medical care to inmates at Dodge Correctional Institution and acting under color of state law.

16. At all times relevant to this action, Dr. Richard Fuller was a doctor licensed to practice medicine in the state of Wisconsin, acting in the course and scope of his employment with the State of Wisconsin to provide medical care to inmates at Dodge Correctional Institution and acting under color of state law.

17. Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller are sued in their individual capacities.

### Facts

18. On October 6, 2016, Zdroik had open-heart surgery at St. Joseph's Marshfield Clinic in Marshfield, Wisconsin to repair his mitral valve. At all relevant times that Zdroik was in their care, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that Zdroik recently had open-heart surgery to repair his mitral valve as that information was contained in the medical records in their possession.

19. Between April 24, 2017 and June 14, 2017, Zdroik was an inmate at Lincoln County Jail.

20. On May 22, 2017, Zdroik submitted a written medical request to Lincoln County Jail Nurse Marla Reimann stating "my hands + feet and arms legs face have been going numb a lot lately. I need to see a Dr. outside of this jail my chest by my incision is numb and really sore. I want to see Marla to make me Appt to cardiologist." [verbatim].

21. On May 27, 2017, Zdroik submitted a written medical request to Lincoln County Jail Nurse Tina Hose stating "Something is wrong with me I've been going numb. I need to see a Dr. my face my hands legs knees hands chest. I drink a lot of water. This is from my heart surgery" [verbatim]. Hose noted in response that Zdroik was concerned about the date of his cardiac follow up appointment, just as he was last week.

22. On June 2, 2017, while in the Lincoln County Jail, Zdroik fell to the ground and was unable to feel or control his legs. At least two inmates pushed the red emergency buttons to report the emergency to correctional officers, but their requests for emergency responses were ignored. After no one responded to the inmates emergency calls one inmate picked Zdroik up and dragged him to the front gate to alert staff of the medical emergency.

23. On June 6, 2017, Zdroik arrived at Aspirus Wausau Hospital in custody, shackled and with Lincoln County Sheriff's Deputies to see cardiologist Dr. Luce for an electrocardiogram and other medical test related to his heart condition.

24. On June 6, 2017, Zdroik was discharged with written instructions that were given to the Lincoln County Sheriff's Deputies to give to the Lincoln County Jail Nurse Reimann stating that Dr. Luce had ordered Zdroik have a follow-up transesophageal echocardiogram ("TEE") test at Aspirus Wausau Hospital on June 30, 2017 at 8:00 a.m.

25. On June 6, 2017, Lincoln County Jail medical staff received written orders from outside specialist Dr. Luce that Zdroik is to present for a TEE test scheduled with Dr. Luce on June 30, 2017 at 8:00 a.m. and included this in his jail medical file.

26. On June 11, 2017, Zdroik submitted a written medical request to Hose stating "My surgeon at Aspirus took Blood did you get my test results Back yet. To see why I been going numb in my legs arms hands chest legs knees my face to time to time Is it my nerves in my chest growing back Joshua L Luce MD Cardiology. Am I gonna be here the end of June to go to my Appt" [verbatim]. In response to Zdroik's request,

Hose wrote in Zdroik's medical file that Zdroik "is also questioning if he will be at jail on June 30 or be transferred to Dodge Correctional." Additionally, Hose wrote "transfer date is pending to Dodge."

27. Based on Hose's training and experience as well as her written response to Zdroik's question whether he would be at Lincoln County Jail at the end of June for his TEE test with Dr. Luce, she knew that if Zdroik was transferred from Lincoln County Jail, that he would not make it to his TEE test ordered by Dr. Luce on June 30, 2017.

28. On information and belief, based on Hose's training and experience she knew that Dodge Correctional Institution is located in Waupun, Wisconsin, over 130 miles from Dr. Luce's office in Wausau, Wisconsin. Additionally, based on Hose's training and experience she knew that if Zdroik was transferred from Lincoln County Jail to Dodge Correctional Institution, that the medical staff at Dodge Correctional would not make arrangements to present Zdroik to a medical appointment in Wausau, Wisconsin and also that the medical staff at Dodge Correctional would not schedule Zdroik for a TEE test on or before June 30, 2017, as Zdroik's outside treating specialist, Dr. Luce, had ordered.

29. On June 12, 2017, Zdroik submitted a written medical request to Lincoln County Jail Nurse Reimann. Nurse Reimann noted that Zdroik was concerned about the numbness/tingling of his extremities due to an unknown cause and that Zdroik was scheduled for a TEE test on June 30, 2017.

30. Based on Reimann's training and experience as well as her review of Zdroik's medical records and her conversation with Zdroik, she knew that if Zdroik

7

was transferred from Lincoln County Jail, that he would not make it to his TEE test ordered by Dr. Luce on or before June 30, 2017.

31. On information and belief, based on Reimann's training and experience she knew that Dodge Correctional Institution is located in Waupun, Wisconsin, over 130 miles from Dr. Luce's office in Wausau, Wisconsin. Additionally, based on Reimann's training and experience she knew that if Zdroik was transferred from Lincoln County Jail to Dodge Correctional Institution, that the medical staff at Dodge Correctional would not make arrangements to present Zdroik to a medical appointment in Wausau, Wisconsin and also that the medical staff at Dodge Correctional would not schedule Zdroik for a TEE test on or before June 30, 2017, as Zdroik's outside treating specialist, Dr. Luce, had ordered.

32. Despite knowing that Zdroik would miss his TEE test if he was transferred, Reimann and Hose did nothing to ensure Zdroik would get a TEE test on or before July 30, 2017, as ordered by outside specialist Dr. Luce.

33. On June 14, 2017, Zdroik was transferred from Lincoln County Jail to Vilas County Jail.

34. Between June 14, 2017 and June 27, 2017, Zdroik was an inmate at Vilas County Jail.

35. On June 14, 2017, the same day Zdroik was transferred from Lincoln County Jail to Vilas County Jail, the medical staff at Vilas County Jail received a complete copy of Zdroik's jail medical records. The coversheet of the Health Transfer

Summary specifically noted under Future Health Care Appointments "6/30/17 – TE (see paperwork)" and "Hx mitral prolapse and replacement Oct 2016."

36. On June 18, 2017, Zdroik submitted a written medical request to Vilas County Jail Nurse Bonnie Crabtree stating "Lincoln Co Jail made me a Dr. Appt. I fell out in the Jail on June 2nd and I went to my Cardiologist on June 5th Monday they took Blood from me 3 tubes I signed a release from the day before I came here to see whats going on Joshua L. Luce from Aspirus is my Cardiologist he thinks I have nerve damage so he also set up a TEE test to check me out the Jail in Lincoln Co set it up it takes 3 weeks to get an Appt its June 30th at 7:00 in Wausau at the Heart + Vasular. I really need to Keep this Appt I been going numb in my legs Arms chest face." [verbatim].

37. On June 19, 2017, Jamie Meier from the Vilas County Sheriff's Department sent an email to Crabtree, informing her that Zdroik was going to be transported to Dodge Correctional on June 27, 2017.

38. On June 19, 2017, Zdroik saw Vilas County Jail Nurse Crabtree. Her notes indicate Zdroik told her "I just had open heart surgery" and "Also, my chest hurts where they did the surgery." She also noted that Zdroik had a TEE test schedule at the end of this month. On a separate Medical History form she noted that Zdroik was currently under M.D. care for a heart follow up. Nurse Crabtree called Dr. Hekman and informed him of Zdroik's above reports.

39. Based on Crabtree's and Heckman's training and experience as well as their review of Zdroik's medical records and their conversation between themselves

9

regarding Zdroik, and their conversations directly with Zdroik, they knew that if Zdroik was transferred from Vilas County Jail, that he would not make it to his TEE test ordered by Dr. Luce on or before June 30, 2017.

40. On information and belief, based on Crabtree's and Heckman's training and experience they knew that Dodge Correctional Institution is located in Waupun, Wisconsin, over 130 miles from Dr. Luce's office in Wausau, Wisconsin. Additionally, based on Crabtree's and Heckman's training and experience they knew that if Zdroik was transferred from Vilas County Jail to Dodge Correctional Institution, that the medical staff at Dodge Correctional would not make arrangements to present Zdroik to a medical appointment in Wausau, Wisconsin and also that the medical staff at Dodge Correctional would not schedule Zdroik for a TEE test on or before June 30, 2017, as Zdroik's outside treating specialist, Dr. Luce, had ordered.

41. Despite knowing this 11 days before Zdroik would miss his TEE test, Crabtree and Heckman did nothing to ensure Zdroik would get a TEE test on or before July 30, 2017, as ordered by outside specialist Dr. Luce.

42. On June 26, 2017, Zdroik submitted a written medical request to Crabtree stating "I also want to no am I going to my cardiologist appt. … I need to go to my Appt to see why my legs chest + knees and arm go numb time to time. My Cardiologist thinks if my nerves are growing back togeather that why I need to get these test done on me." [verbatim].

43. On June 27, 2017, Zdroik was transferred from Vilas County Jail to Dodge Correctional Institution.

44. On June 27, 2017, Dodge Correctional Institution Defendants Hoban, Kuber and Fuller received a complete copy of Zdroik's jail medical file from Lincoln County and Vilas County Jail, including the June 6, 2017, letter from Apirus Wausau Hospital stating that Zdroik had a TEE test scheduled with Dr. Luce on June 30, 2017 at 8:00 a.m. The Health Transfer Summary coversheet specifically noted under Future Health Care Appointments "6/30/17 – TEE (see paperwork)" and "hearts valve repair in Oct/2016."

45. Between June 27, 2017 and August 30, 2017, Zdroik was an inmate at Dodge Correctional Institution.

46. On June 27, 2017, at approximately 11:10 a.m., Zdroik had an intake screening with Dodge Correctional Institution Nurse Shaune Hoban. Hoban reviewed Zdroik's medical file and noted that Zdroik had a follow up appointment scheduled on June 30, 2017 at 8:00 a.m. with Dr. Luce at Aspirus Cardiology for a TEE test. Hoban also noted that Zdroik recently had open-heart surgery at Marshfield, Wisconsin, that he had been experiencing numbness in his arms and legs. Despite this, Hoban wrote that no follow up doctor appointment or nurse appointment was necessary. These medical notes were reviewed and signed by Dr. Prapti Kuber.

47. On June 28, 2017, Zdroik saw a Dr. Kuber at the Dodge Correctional Institution. Dr. Kuber noted in his medical file that Zdroik complained of chest pain and dizziness.

11

48. On July 2, 2017, Zdroik reported to Dodge Correctional Institution Nurse Monica L. Gagnon that his hands had been numb for approximately one week and that he was not feeling well. Nurse Gagnon made a record of this in Zdroik's medical file.

49. On July 4, 2017, Zdroik wrote to Dr. Kuber requesting healthcare services, specifically Zdroik stated "Dr. Kuber I was wondering if you made me my cardiologist Appt yet and im in pain that mapap isn't working at night I cant sleep but two-three hours at a time Im having numb feelings in my chest arms and legs I need to see someone for this please. Thank you." [verbatim]. On July 7, 2017 Dr. Kuber wrote a note in Zdroik's medical file in response to his above healthcare request: "You can address all issues at your physical, which you have not done yet. Until then – we do not start treatment plans."

50. On July 10, 2017, Zdroik had an intake medical exam by Dr. Richard Fuller at Dodge Correctional Institution where he informed the doctor that he has had chest pain and intermittent numbness in his legs and arms. He informed the doctor that he had been scheduled for a TEE test on June 30, 2017 in Wausau, Wisconsin, but that that he was transferred to Dodge Correctional on June 27, 2017. Zdroik asked Dr. Fuller when he would have his TEE test done.

51. The following day, on July 11, 2017, at approximately 5:45 p.m., Zdroik suffered an acute ischemic stroke at Dodge Correctional Institution. Dodge Correctional Institution Nurse Barry Rudack reported receiving a call from one of the correctional officers that Zdroik cannot move the left side of his body and has left side facial droop.

52. At the time Zdroik suffered his stroke, 14 days after arriving at Dodge Correctional Institution, none the Dodge Correctional Institution Defendants Hoban, Kuber or Fuller nor any other Dodge Correctional Institution medical staff had even scheduled any TEE test let alone any outside cardiology appointment for Zdroik.

53. On July 11, 2017, at approximately 6:05 p.m., Zdroik was transported to Waupon Memorial Hospital, and then by helicopter Med Flight to UW Hospital in Madison, Wisconsin.

54. Upon arrival at the UW Hospital Zdroik was examined and stroke specialist Dr. Sattin noted that Zdroik presented with upgoing plantar reflex on his left side, with left sensory neglect and facial droop. A TEE test was performed and showed a partially thrombosed left atrial appendage remnant with active thrombosis. Dr. Sattin noted this was the cause of the stroke. Review of the brain CT scan showed a loss of gray white matter differentiation in the right temporal lobe.

55. On information and belief, based on their medical training and experience, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that a TEE test is a test that produces detailed pictures of your heart and the arteries that lead to and from it using high-frequency sound waves (ultrasound). That TEE tests are used to check if there is abnormal tissue around heart valves that could indicate bacterial, viral or fungal infections, if blood is leaking backward through heart valves (regurgitation) or if valves are narrowed or blocked (stenosis), or if there are blood clots in the heart or the arteries, which can cause a stroke.

56. On information and belief, based on their medical training and experience, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that repeated episodes of numbness or tingling in the extremities, as well as dizziness and loss of consciousness are signs of a transient ischemic attacks or mini-strokes and that such mini-strokes indicate an increased risk of a full-blown stroke.

57. Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that Zdroik recently had open heart surgery and that outside specialists Dr. Luce was treating Zdroik and had specifically ordered Zdroik present for a TEE test on June 30, 2017. All Defendants knew of this information because it was contained in Zdroik's medical records, which they possessed and reviewed.

58. Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that Zdroik was at increased risk for a stroke given his recent open-heart surgery, documented medical symptoms and that outside specialists Dr. Luce was treating Zdroik and had specifically order a TEE test be performed on June 30, 2017.

59. On information and belief, based on their medical training and experience, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that their failure to conduct cardiology tests or allow Zdroik to seek outside cardiology testing after Zdroik's repeated complaints of numbness in his extremities following open-heart surgery, and his repeated requests for cardiology testing, coupled with their knowledge that Zdroik was being actively treated by a heart specialist who ordered that he undergo a TEE test on June 30, 2017, created an unreasonably and substantial risk of danger to Zdroik.

60. On information and belief, based on their medical training and experience, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller knew that delaying or cancelling Zdroik's TEE test when he was being actively treated by an outside specialist who ordered that he undergo a TEE test on June 30, 2017, created an unreasonably and substantial risk of danger to Zdroik.

61. Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller unnecessary delay in and failure to provide Zdroik with adequate medical care to address his repeated request for cardiology testing and complaints of numbness in his extremities after open-heart surgery, including the failure to provide Zdroik with a TEE test on or before June 30, 2017, as ordered by Dr. Luce, resulted in Zdroik suffering an acute ischemic stroke, which caused Zdroik permanent neurological damage to his brain.

62. Had the Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller acted in a manner to allow Zdroik to have a TEE test done on or before June 30, 2017, as ordered by Dr. Luce, the test would have revealed the partially thrombosed left atrial appendage remnant with active thrombosis and immediate intervention would have prevented Zdroik from suffering an acute ischemic stroke, which caused Zdroik permanent neurological damage to his brain.

63. Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller had the opportunity, duty and ability to intervene on behalf of Plaintiff during Defendants' pattern and practice of violating Plaintiffs' constitutional rights in one or more of the ways described above, but failed to do so.

64. As a result of Defendants' misconduct, Plaintiff suffered and will continue to suffer permanent personal injuries and damages including but not limited to, an acute ischemic stroke, pain, dizziness, nausea, weakness, emotional distress and fear that his untreated serious medical condition may result in his death.

## COUNT I
### 42 U.S.C. § 1983 Claim for Deliberate Indifference – Denial and Delay of Medical Care
### (All Individually-Named Defendants)

65. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

66. As described more fully above, Defendants had notice of Plaintiff's medical needs and the seriousness of his medical needs, and knew the unreasonable risk of harm to Plaintiff if he did not receive appropriate and timely medical care. Despite that knowledge, Defendants failed to provide proper and timely medical care or access to medical care to treat Plaintiff's serious health problem, and failed to follow the orders of an outside medical specialist or acted in a manner which they knew would prevent other medical staff from following the orders of an outside treating specialist in violation of Plaintiff's constitutional right to be free from deliberate indifference to a serious medical need under the Eighth Amendment of the United States Constitution.

67. Defendants acted recklessly and/or with callous indifference to the federally protected rights of Plaintiff.

68. As a direct and proximate result of these Defendants' unlawful action, Plaintiff has suffered, and will continue to suffer damages.

## COUNT II
## State Law Claim for Negligence
### (All Individually-Named Defendants)

69. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

70. In the manner more fully described above, Defendants Reimann, Hose, Crabtree, Hekman, Hoban, Kuber and Fuller owed Zdroik a duty to exercise the degree of care, skill, and judgment that reasonable registered nurse/physician would exercise under the same or similar circumstances and they were negligent in their evaluation and treatment of Plaintiff, in that they, among other things, failed to provide proper and timely medical care or access to medical care to treat Plaintiff's serious health problem, failed to follow the orders of an outside medical specialist or acted in a manner which they knew would prevent other medical staff from following the orders of an outside treating specialist, failed to implement proper policies and procedures for the monitoring of seriously ill inmates, failed to institute appropriate procedures for the transfer of seriously ill inmates to appropriate health care facilities and were otherwise negligent.

71. As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions, Zdroik has suffered, and will continue to suffer damages.

17

Case 2:18-cv-00244-JPS   Filed 04/13/18   Page 17 of 19   Document 21

## COUNT III
### State Law Claim for Negligence – *Respondeat Superior*
**(Defendant CHC and ACH)**

72. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

73. Defendant Hose, Hekman and Crabtree were acting in the course and scope of their employment at the time they breached the duty of care they owned to Zdroik, proximately causing Zdroik's damages.

74. Defendant CHC is vicariously liable for the negligence of Defendant Hose pursuant to the doctrine of *respondeat superior*.

75. Defendant ACH is vicariously liable for the negligence of Defendants Hekman and Crabtree pursuant to the doctrine of *respondeat superior*.

## COUNT IV
### State Law Claim for Indemnification

76. Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

77. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages which employees are liable for acts within the scope of their employment.

78. At all times relevant to this action, Defendants committed the acts alleged above in the scope of their employment with Lincoln County or the State of Wisconsin.

WHEREFORE, Plaintiff demands actual or compensatory damages against Defendants, and because they acted maliciously, wantonly, or oppressively, punitive

damages, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: April 13, 2018

/s/ John H. Bradley
John H. Bradley
Strang Bradley, LLC
33 E. Main St., Ste. 400
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com