IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ROBERT A. ZDROIK,

    Plaintiff,

v.

    Case No: 18-CV-244

MARLA REIMANN, *et. al.,*

    Defendants.

**DEFENDANTS LINCOLN COUNTY AND MARLA REIMANN'S BRIEF IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, SEVER AND TRANSFER TO THE WESTERN DISTRICT**

Defendants Lincoln County and Marla Reimann (the "Defendants"), by their attorneys, Crivello Carlson, S.C., respectfully submit this Brief in Support of their Motion to Dismiss or, In the Alternative, Sever and Transfer to the Western District.

**INTRODUCTION**

Plaintiff Robert Zdroik commenced this action under 42 U.S.C 1983 on February 19, 2018. (Dkt. 1). He filed a First Amended Complaint on April 13, 2018. (Dkt. 21). He filed his Second Amended Complaint on May 31, 2018. (Dkt. 55). Mr. Zdroik was incarcerated at Lincoln County Jail between April 24, 2017 and June 14, 2017 before his transfer to Vilas County Jail and eventually Dodge County Correctional Institution on June 27, 2017. (Dkt. 55, ¶¶ 17, 34, 43). Mr. Zdroik allegedly suffered an acute ischemic stroke on July 11, 2017 while incarcerated at Dodge County Correctional Institution. (Dkt. 55, ¶ 51). Mr. Zdroik is alleging that Nurse Marla Reimann, a nurse at Lincoln County Jail, showed deliberate indifference to his serious medical needs while incarcerated at Lincoln County Jail resulting in Mr. Zdroik's July 11

1

stroke. (Dkt. 55, ¶¶ 65-75). As for Lincoln County, Mr. Zdroik claims that Lincoln County is liable for damages under Wis. Stat. § 895.46 arising from its employee Nurse Reimann's allege tortious conduct. (Dkt. 21, First Am. Compl. ¶¶ 80-82).[1] There is no cause of action against Lincoln County if Mr. Zdroik fails to state a viable claim for relief against Nurse Reimann.

Nurse Reimann's interactions with Mr. Zdroik at all times relevant to the Second Amended Complaint occurred completely in the Western District between April 24 and June 14, 2017 during Mr. Zdroik's incarceration at Lincoln County Jail. (Dkt. 55, ¶¶ 18, 22, 28). While a prisoner at the Lincoln County Jail, Mr. Zdroik presented to cardiologist Joshua Luce, M.D., at Aspirus Wausau Hospital on June 6 for cardiac evaluation. (Dkt. 55, ¶¶ 21). Dr. Luce scheduled a follow-up transesophageal echocardiogram ("TEE") test at Aspirus Wausau Hospital for June 30, 2017. (Dkt. 55, ¶ 22). Lincoln County medical staff received Dr. Luce's orders on June 6 regarding Mr. Zdroik's scheduled TEE test on June 30. (Dkt. 55, ¶ 22). Nurse Reimann did not provide any medical care to or otherwise have any personal involvement with Mr. Zdroik after his transfer to Vilas County Jail on June 14 and eventually to Dodge County. Nevertheless, Mr. Zdroik summarily concludes that Nurse Reimann allegedly knew that he would miss the June 30 TEE test due to his transfer from the Lincoln County Jail and that Dodge County medical staff would not schedule a new TEE test on or before June 30. (Dkt. 55, ¶¶ 29-30). Based on the facts alleged, Mr. Zdroik has failed to state a viable claim for relief against Nurse Reimann and Lincoln County, and this Court should dismiss them from this suit with prejudice.

Without regard to the merit of Mr. Zdroik's allegations, Nurse Reimann's alleged wrongful conduct constitutes a separate and distinct occurrence from any alleged wrongful

---

[1] Plaintiff is also asserting Eighth Amendment deliberate indifference claims against the other individually-named defendants. (Dkt. 55). Aside from Plaintiff's claims against Nurse Tina Hose, his claims against the other individual defendants arise out of acts or omissions that occurred wholly within their respective correctional institutions. These claims against the other defendants are discrete and separate from his claims against Nurse Reimann and Lincoln County.

2

conduct during his incarceration at Vilas County Jail and Dodge Correctional Institution. None of Mr. Zdroik's allegations against Nurse Reimann and Lincoln County are logically related to Mr. Zdroik's claims against the other individually named defendants or even occurred in the Eastern District where this suit is venued. Accordingly, in the alternative, this Court should sever Mr. Zdroik's claims against Nurse Reimann and Lincoln County pursuant to Federal Rule of Civil Procedure 21 and transfer them to the Western District where they belong.

## ARGUMENT

### I. STANDARDS OF REVIEW

#### A. Motion to Dismiss.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 533, 570, 127 S.Ct. 1955 (2007). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 129 S.Ct. at 1951). A court should essentially parse out the conclusory allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id*. "The degree of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id*. (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A more complex case . . . will require more detail, both to give the

3

opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson*, 614 F.3d at 405.

Plaintiff fails to state a claim against Lincoln County and Nurse Reimann under section 1983 upon which relief can be granted. Accordingly, this Court should grant Lincoln County and Nurse Reimann's Motion to Dismiss and dismiss them from this case with prejudice and costs.

**B.    Rule 21 Motion to Sever.**

Rule 21 authorizes the court to sever any misjoined party or claim against a party at any time. Fed. R. Civ. P. 21; *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 229 (N.D. Ill. 2002); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits."). The Seventh Circuit instructs that severance under Rule 21 is appropriate when the claims sought to be severed are "discrete and separate" from each other. *Rice v. Sunrise Express*, 209 F.3d 1008, 1016 (7th Cir. 2000); *see also Gaffney v. Riverboat Servs, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (explaining that one claim must be capable of resolution despite the outcome of the other claim). The legal standard for evaluating whether to sever "discrete and separate" claims is based on Rule 20(a). *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974); *Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000). Rule 20(a) provides that claims are properly joined when (1) the claims arise out of the same transaction or occurrence, or series of transactions or occurrences, and (2) the claims present common questions of law and fact. Fed. R. Civ. P. 20(a); *Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 76-77 (E.D. Wis. 1985). A court must sever a claim when a party seeking joinder fails to satisfy either condition of Rule 20(a). *Bailey*, 196 F.R.D. at 515.

At issue here is whether Mr. Zdroik's claims against Lincoln County and Nurse Reimann arose out of the same "transaction or occurrence" or series of transactions and occurrences as the

4

other named defendants. In making this determination, courts ascribe a "logical relatedness" requirement to Rule 20(a):

> "Transaction" and "occurrence" are interpreted broadly and all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. Courts determine the logical relatedness of separate occurrences by considering a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decision-making or widely-held policy.

*Robinson v. Dart*, 2014 WL 222711, *2 (N.D. Ill. Jan. 21, 2014) (internal citations omitted) (Exhibit A). Applying these factors, it is clear that Mr. Zdroik's claims against Defendants are not logically related to Mr. Zdroik's claims against the other defendants. In fact, none of Mr. Zdroik's claims against Defendants even arose in the Eastern District. If this Court decides not to dismiss Lincoln County and Nurse Reimann from this suit, which it should, then this Court should grant their alternative motion to sever this claim and transfer it to the Western District where it belongs.

**II. DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS UNDER 42 U.S.C. § 1983.**

This Court should dismiss Plaintiff's suit against Defendants Lincoln County and Nurse Reimann because he has failed to state a claim against them. To establish a viable Eighth Amendment claim for deliberate indifference, Mr. Zdroik must allege both objective and subjective components of his claim. First, Mr. Zdroik must plead that he had an objectively serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Second, Mr. Zdroik must allege that Nurse Reimann actually knew of and disregarded a substantial risk of harm to Mr. Zdroik's health and safety tantamount to criminal recklessness. *Farmer*, 511 U.S. at 834; *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (explaining that knowledge of a substantial risk to the inmate's health is not enough; the response to the risk must be so dangerous as to constitute criminal *recklessness*). At issue is the

5

subjective element of Mr. Zdroik's claim, *i.e.*, that Nurse Reimann consciously disregarded Mr. Zdroik's substantial risk of stroke. Mr. Zdroik has failed to plead any non-conclusory allegations against Nurse Reimann that she had the requisite culpable state of mind, and therefore this Court should dismiss Nurse Reimann and Lincoln County from this suit.

Mr. Zdroik's allegations against Nurse Reimann that she consciously disregarded any risk to his health are insufficient to survive a Rule 12(b)(6) motion to dismiss. *McCauley,* 671 F.3d at 616. Mr. Zdroik essentially alleges that Nurse Reimann decided to ignore instructions from Dr. Luce or somehow acted in a manner contrary to Dr. Luce's instructions related to Mr. Zdroik's scheduled June 30, 2017 TEE test. (Dkt. 55, ¶¶ 30-31, 66-75). Nevertheless, Mr. Zdroik acknowledges that (1) Nurse Reimann and Lincoln County jail medical staff sent him off-site to Dr. Luce shortly after he suffered a "mini-stroke"; (2) Nurse Reimann and Lincoln County jail medical staff approved of Dr. Luce's recommendation for a TEE test on June 30, 2017; and (3) Nurse Reimann communicated the June 30, 2017 TEE appointment to Mr. Zdroik's providers at the Vilas County Jail when he was transferred on June 14, 2017. (Dkt. 55, ¶¶ 21-23, 32, 34). There are zero allegations of wrongful conduct against Nurse Reimann while Mr. Zdroik was her patient at the Lincoln County Jail.

As Mr. Zdroik cannot point to any actions or inactions on Nurse Reimann's behalf inside Lincoln County Jail to establish his claim, Mr. Zdroik's entire theory of liability against Nurse Reimann rests on the actions of his medical providers *outside of Lincoln County Jail*. Mr. Zdroik alleges that Nurse Reimann knew or should have known that his transfer from Lincoln County Jail would result in him missing his June 30, 2017 appointment. (Dkt. 55, ¶¶ 30-31). Mr. Zdroik does not, however, allege *any link* between the actions or inactions of the other individually named defendants and Nurse Reimann or otherwise allege how Nurse Reimann was personally

6

involved in the alleged constitutional deprivation. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (explaining that personal involvement is required for liability under section 1983 as liability is predicated upon fault and, thus, liability cannot attach unless the individual caused the constitutional deprivation). Without this essential personal link, his claim against Nurse Reimann and Lincoln County should be dismissed.

The deficiencies in Mr. Zdroik's allegations against Nurse Reimann are clear. Mr. Zdroik's does not allege that Nurse Reimann personally knew before he left Lincoln County Jail that any of the medical providers in Vilas or Dodge County would cancel the June 30, 2017 TEE test. He does not allege that Nurse Reimann had the authority to put a so-called "medical transfer hold" on his transfer to Vilas County. (*See* Dkt. 55, ¶ 31). He does not allege that anybody informed Nurse Reimann of the decision to cancel the June 30, 2017 TEE test. He does not allege that Nurse Reimann and the Vilas and Dodge County medical providers conspired to cancel his June 30, 2017 Tee test. Nor does he allege that Nurse Reimann had a practice of facilitating the cancellation of inmates' medical appointments upon transfer outside of Lincoln County. Indeed, Mr. Zdroik does not allege any way in which Nurse Reimann was personally involved in the alleged deprivation of his constitutional rights. Mr. Zdroik *only alleges* that Nurse Reimann should have foreseen the actions or inactions of the Vilas and Dodge County medical providers based on her "training and experience". (Dkt. 55, ¶¶ 30-31). This is not a factual allegation so much as unfounded speculation. *McCauley,* 671 F.3d at 616 (instructing that a court should parse out the conclusory allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief'") (quoting *Iqbal*, 129 S.Ct. at 1951). To be sure, Mr. Zdroik's only factual allegations establish that Nurse Reimann (1) provided him with proper and timely medical care, including access to outside medical care, and (2) fulfilled Dr.

7

Luce's instructions by communicating information about the June 30, 2017 TEE test to Vilas County Jail medical staff upon Mr. Zdroik's transfer. There is no well-pleaded basis for the imposition of liability against Nurse Reimann and Lincoln County.

Even if Mr. Zdroik allegations are sufficient to support a claim that Nurse Reimann did not act perfectly, there are no allegations that Nurse Reimann's actions or inactions amount to the high threshold of deliberate indifference. *See Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) (explaining that the Eighth Amendment does not demand that prison officials perform their functions flawlessly). "[D]eliberate indifference is a synonym for intentional or reckless conduct, and…*'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred.*" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal citations omitted) (emphasis added). Allegations of "negligence or gross negligence is not enough"; Mr. Zdroik's allegations against Nurse Reimann must evince such danger as to constitute recklessness in the "criminal sense" of the word. *Lee*, 533 F.3d at 509. Here, no jury could plausibly infer that Mr. Zdroik allegations against Nurse Reimann amount to criminal recklessness when Mr. Zdroik cannot even allege that Nurse Reimann was personally involved in the decision to cancel his June 30, 2017 TEE test. Mr. Zdroik's allegations against Nurse Reimann are insufficient to state a viable claim for relief under this high standard.

Without regard to the merits of Nurse Reimann's alleged wrongful conduct, this Court should still dismiss Mr. Zdroik's claims against Nurse Reimann and Lincoln County because his alleged facts are insufficient to support a finding that Nurse Reimann's conduct proximately caused his alleged injuries. *See J.M. v. City of Milwaukee*, 249 F.Supp.3d 920, 944 (E.D. Wis. 2017) (explaining that like any civil action, those pursued under Section 1983 require a plaintiff to show causation) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012)).

8

Causation is divided into two elements: (1) but-for causation, "*i.e.*, the injury would not have occurred absent the conduct," and (2) proximate or legal causation, "*i.e.*, the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* The causal chain between an unlawful act and the injury complained-of may be broken by an intervening or superseding cause. *Shick v. Illinois Dept. of Human Services*, 307 F.3d 605, 615 (7th Cir. 2002) ("[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.") (citing Restatement of Torts (Second) § 440)). The question of causation may be appropriate for a court to resolve as a matter of law. *Id.* This is one of those cases.

It is clear that the actions or inactions of Mr. Zdroik's Vilas and Dodge County medical providers constitute a superseding cause of his alleged injuries. Mr. Zdroik alleges that he was not sent for his scheduled TEE test on June 30, 2017 and that this TEE test would have prevented his July 11, 2017 stroke. (Dkt. 55, ¶¶ 2, 22-23, 73). Nevertheless, Mr. Zdroik acknowledges that (1) Nurse Reimann and Lincoln County jail medical staff sent him off-site to Dr. Luce shortly after he suffered a "mini-stroke"; (2) Nurse Reimann and Lincoln County jail medical staff approved of Dr. Luce's recommendation for a TEE test on June 30, 2017; and (3) Nurse Reimann communicated the June 30, 2017 TEE appointment to Mr. Zdroik's providers at the Vilas County Jail when he was transferred on June 14, 2017. (Dkt. 55, ¶¶ 21-23, 32, 34). Mr. Zdroik's Vilas and Dodge County medical providers, not Nurse Reimann, kept him from attending his June 30, 2017 TEE test. The actions and inactions of these other providers represent independent conduct that was not foreseeable by Nurse Reimann. *See City of Chicago v. M/V Morgan*, 375 F.3d 563, 574-575 (7th Cir. 2004) (explaining that a superseding cause is when an injury was actually brought about by a later cause of independent origin that was not foreseeable). There are insufficient

pleaded facts to support a finding that Nurse Reimann's alleged wrongful conduct was the legal cause of Mr. Zdroik's alleged injuries. Thus, this Court should grant Nurse Reimann and Lincoln County's Motion to Dismiss and dismiss Mr. Zdroik's claims against them as a matter of law.

### III. ALTERNATIVELY, THIS COURT SHOULD SEVER PLAINTIFF'S CLAIMS AGAINST DEFENDANTS BECAUSE THEY ARE NOT LOGICALLY RELATED TO PLAINTIFF'S CLAIMS AGAINST THE OTHER NAMED DEFENDANTS.

If this Court does not dismiss Plaintiff's claims against Nurse Reimann and Lincoln County, then this Court should sever Plaintiff's claims against them under Rule 21 as misjoined in this lawsuit and transfer them to the Western District where they belong. Plaintiff's claims against Defendants are not "logically related" to his claims against the Vilas and Dodge County defendants because they did not arise from the same transaction or occurrence, or series of transactions or occurrences, as his claims against the other named defendants. *See Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 76-77 (E.D. Wis. 1985). Accordingly, this Court should sever these claims.

Courts in the Seventh Circuit assess logical relatedness in terms of the proximity and similarity of the transaction or occurrence. *See, e.g., Robinson*, 2014 WL 222711; *Wilson v. Peslak*, 2005 WL 1227316 (N.D. Ill. May 12, 2005) (Exhibit A); *cf. Carthage v. Malcomson*, 2017 WL 1383731 (E.D. Wis. April 18, 2017) (Exhibit A); *Lozada v. City of Chicago*, 2010 WL 3487952 (N.D. Ill. Aug. 30, 2010) (Exhibit A); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000); *Ramos v. Playtex Prods.*, 2008 WL 4066250 (N.D. Ill. Aug. 27, 2008) (Exhibit A). In other words, if there is a cause and effect relationship between occurrences, or if the occurrences share some similarity with respect to time, location or witnesses and evidence, then courts are more likely to consider them logically related. Here, Mr. Zdroik's claims against Nurse Reimann and Lincoln County share no proximity or similarity to the "discrete and separate" actions or inactions taken by the other named defendants. *See Rice*, 209 F.3d at 1016.

10

*Robinson v. Dart* illustrates the degree of proximity and similarity necessary to meet the logical relatedness threshold. In *Robinson*, four inmates sued the Cook County Jail and the Sheriff of Cook County for alleged deliberate indifference and failure to provide adequate conditions of confinement leading to three plaintiffs contracting tuberculosis and one a fungal infection. 2014 WL 2227111, at *1. The defendants moved pursuant to Rule 21 to dismiss or sever three of the inmates on the basis that they were improperly joined under Rule 20(a) by the original plaintiff. *Id.* The district court denied the motion as it related to tuberculosis because the claims were logically related. *Id.* In assessing whether the claims arose from the same transaction or occurrence, *Robinson* highlighted the similar timing, location, and circumstances of the plaintiffs' claims. *Id.*, *1-2. *Robsinson* explained that since the original plaintiff and two of the other inmates claimed to have contracted the same disease (TB), were assigned to the same tier in the jail, and lived together during the same general time period, their claims were logically related. *Id.*, *4. In contrast, the court severed the plaintiff making the fungal infection claim because his claim did not involve the same factual issues and circumstances and required different evidence and witnesses. *Id.*

The logic of *Robinson* is clear and applies equally here. *Robinson* explained that the similarities between the TB claims in terms of timing, location, parties, and evidence suggested that the claims were logically related. The opposite was true regarding the one plaintiff's fungal infection claim. Here, Mr. Zdroik's claims against Nurse Reimann and Lincoln County are more like the fungal infection claim in *Robinson.* These claims are different with respect to timing, location, parties, witnesses, evidence, and expected testimony from Mr. Zdroik's claims against the other named defendants. The factual issues and circumstances of Mr. Zdroik's incarceration at the Vilas County Jail and the Dodge County Correctional Institution are discrete and separate from Mr. Zdroik's allegations against Nurse Reimann and Lincoln County. The fact that Mr. Zdroik's claims

spread three different facilities across the state strengthens the conclusion that his claims did not arise from the same series of transactions or occurrences. Thus, there is no logical relatedness.

*Wilson* also supports the position that Mr. Zdroik's claims against Nurse Reimann and Lincoln County did not arise from the same series of transactions or occurrences as his claims against the other named defendants. In *Wilson*, six plaintiffs sued the Town of Cicero and three of its police officers for alleged violations of their Fourth Amendment rights to be free from illegal search and seizure. 2005 WL 1227316, *1. The defendants moved under Rule 21 to sever the plaintiffs' respective suits into separate actions. *Id. Wilson* denied the motion, holding that all of the plaintiffs' claims arose from the same series of transactions. *Id.*, *2-3. In so holding, *Wilson* observed that the half of the plaintiffs' interactions with the officers triggered the other plaintiffs' interactions with the officers forming the bases of the plaintiffs' multiple claims. *Id.*, *3. *Wilson* emphasized the causative link between the claims, *i.e.*, one claim followed the others in a reactionary chain. *Id.* The court also highlighted the common identity between the defendants and the plaintiffs' allegations that the Town of Cicero had a general policy of police misconduct as factors in favor of joinder. *Id.*

The same factors that led *Wilson* to rule in favor of joinder are not present in this case. Here, any action or inaction on the part of Nurse Reimann occurred in a vacuum and did not affect the actions or inactions of any defendants in Vilas or Dodge county whatsoever. There is no causal or common link between the separate acts. To this end, there are numerous defendants in this case working for various employers spread out across three facilities in different parts of Wisconsin. There is no relationship between these defendants as in *Wilson*, nor is there any allegation of any general policy of indifference to medical needs. Mr. Zdroik argues that his claims against all Lincoln, Vilas, and Dodge defendants are logically related because they were all allegedly

12

deliberately indifferent by: (1) not providing adequate medical care; (2) acting in a manner which prevented Mr. Zdroik from receiving necessary medical care; and (3) not placing a medical transfer hold on Mr. Zdroik or preventing his transfer when "they knew that the medical staff at the subsequent facilities would be likewise deliberately indifferent." (Dkt. 55, ¶¶ 66-75). These general allegations belie the fact that each of the Lincoln, Vilas, and Dodge County defendants acted independently of one another and based on facts and circumstances unique to Mr. Zdroik's incarceration at their respective institutions. These separate acts at separate institutions raise issues unique to each defendant and require different evidence and witnesses to investigate. The fact that Mr. Zdroik believes the separate defendants' discrete and independent acts amount to similar allegations is not enough to label his claims logically related.

This case is more like *Lozada*, *Bailey*, *Ramos*, and *Carthage*, which all ruled against joinder. In *Lozada*, 15 plaintiffs sued the City of Chicago and one of its police officers alleging false arrest and malicious prosecution. 2010 WL 3487952, *1-2. The defendants filed a Rule 21 motion to sever. *Id. Lozada* granted the motion, determining that despite the factual similarities between each incident, each arrest would require individual discovery and fact finding, different testimony and witnesses, and separate questions for the defendants to answer. *Id.* at *3. Thus, the court ruled that each arrest did not constitute a series of transactions or occurrences and were not logically related. *Id.* The same is true here. Plaintiff's undue emphasis on the similar legal standard for each claim is misguided. Like *Lazada*, this case is actually three separate cases all requiring unique considerations, discovery, and testimony. They are discrete claims with no overlapping proof or testimony that should be severed.

*Bailey* presents another example of how courts emphasize causal links and similarities related to time, location, and witnesses and evidence in evaluating logical relatedness. In *Bailey*,

13

five plaintiffs sued their former employer for alleged separate acts of racial discrimination. 196 F.R.D. at 514-15. The defendant moved to sever under Rule 21, and the court granted the motion. *Id.* at 515-16. *Bailey* ruled that the plaintiffs' claims did not present a logical series of transactions or occurrences because the claims lacked, among other things, any causal link between the alleged acts of discrimination and the separate discrimination claims. *Id. Bailey* stated that "although the plaintiffs' claims rest upon the same general theory of law—race discrimination—this is not sufficient for purposes of Rule 20(a)." *Id.* at 517. As in *Bailey*, Mr. Zdroik's claims against the various defendants, even if he alleges the same general theory of law, are discrete and present no causal link between them. Each claim of deliberate indifference occurred independently of one another, meaning that there is no connection between Mr. Zdroik's claims against Nurse Reimann and those against the other individually named defendants.

*Ramos* is another case in which a court severed misjoined claims on the grounds that the claims lacked overlapping proof and testimony. In *Ramos*, several defendants sued four defendants on product liability grounds. 2008 WL 4066250, *1. Two of the defendants moved under Rule 21 to sever the plaintiffs' claims against them. *Id.* at *1-2. *Ramos* granted the motions, holding that the claims against the different defendants failed to satisfy the same transaction or occurrence requirement in Rule 20(a). *Id.* at *4. *Ramos* based its holding largely on the fact that none of the allegations indicated any logical relationship or coordination between the defendants except for suggesting that each defendant engaged in similar, as opposed to related, conduct. *Id.* at *3. *Ramos* is equally applicable here. All Mr. Zdroik alleges is that the numerous defendants engaged in similar conduct. As *Ramos* instructs, this is not enough for joinder. "Related" conduct is necessary, and related conduct means a degree of coordination or connectivity must exist between claims against separate defendants. Mr. Zdroik has not alleged that the defendants engaged in "related" conduct or

14

otherwise coordinated with one another. In fact, he alleges the exact opposite. Mr. Zdroik's claims against Nurse Reimann and Lincoln County are not logically related to his other claims because each defendant acted independently.

*Carthage* is also instructive and directly analogous to this case. *Carthage*, like the courts in *Robinson*, *Wilson*, *Lozada*, *Bailey*, and *Ramos*, stressed the "common thread" that must link claims in order to show that the claims arose from the same transaction or occurrence or series of transactions or occurrences. 2017 WL 1383731, * 2. In *Carthage,* the plaintiff alleged constitutional violations related to his medical care against officials from both the Brown County Jail and the Dodge County Correctional Institution. *Id.*; *Carthage v. Radtke*, 2017 WL 2572375, * 2 (E.D. Wis. July 14, 2017) (Exhibit A). Plaintiff also asserted an additional constitutional claim against the Dodge County officials. 2017 WL 1383731, *2. Despite the fact that the plaintiff alleged the same constitutional violations against both sets of defendants, *Carthage* refused to join the claims. *Id. Carthage* determined that the plaintiff's claims against the Dodge County defendants belonged in a different suit from the Brown County defendants because the Dodge County claims implicated different people, times, locations, and discrete acts. *Id.* In other words, the claims against the various defendants lacked the requisite "common thread" to establish joinder. *Id. Carthage* stands for the proposition that if multiple claims involve different people, times, locations, and discrete acts, even if those claims involve the same legal theories, then those claims do not arise from the same transaction or occurrence.

The exact same is true in the present case. The alleged wrongdoings at the Vilas County Jail and Dodge County Correctional Institution were "perpetrated by different people, at different times, and in different ways" from whatever alleged wrongdoing occurred on the independent part of Nurse Reimann during Mr. Zdroik's incarceration at Lincoln County Jail. *Id.* There is no

15

related, linked, causal, coordinated or otherwise common thread between Mr. Zdroik's various claims. There is a complete lack of overlapping proof and testimony. The fact that Mr. Zdroik asserts the same legal theory against all defendants is insufficient to justify joinder. Thus, severance of Mr. Zdroik's claims against Nurse Reimann and Lincoln County is appropriate.

## **CONCLUSION**

For the reasons stated above, this Court should dismiss Defendants Lincoln County and Marla Reimann from this suit. Alternatively, this Court should sever Mr. Zdroik's claims against Defendants and transfer them to the Western District where they belong.

Dated this 21st day of June, 2018.

By: */s/ Samuel M. Mitchell*_____
SAMUEL C. HALL, JR.
State Bar No. 1045476
SARA C. MILLS
State Bar No. 1029470
SAMUEL M. MITCHELL
State Bar No. 1093820
Attorneys for Defendants Lincoln County and Marla Reimann
CRIVELLO CARLSON, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: (414) 271-7722
Fax: (414) 271-4438
E-mail: shall@crivellocarlson.com
smills@crivellocarlson.com
smitchell@crivellocarlson.com