UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT A. ZDROIK,

       *Plaintiff,*

       *v.*

MARLA REIMANN, *et al.*,

       *Defendants.*

Case No. 2:18-cv-244-JPS

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS LINCOLN COUNTY AND MARLA RIEMANN'S MOTION TO SEVER AND TRANSFER TO THE WESTERN DISTRICT

---

Robert A. Zdroik, by counsel, offers this brief in opposition to Defendants Lincoln County and Marla Riemann's Motion to Sever. For the reasons stated below Plaintiff requests this Court deny their Motion to Sever and allow Plaintiff to proceed with his claims against all individually named defendants in this action.

## I.      STATEMENT OF FACTS

Plaintiff Zdroik has alleged that between April 24, 2017 and June 14, 2017, he was an inmate at Lincoln County Jail. ECF No. 55, Second Am. Compl., ¶ 17. Defendant Marla Reimann was responsible for the medical care of Zdroik based on her employment with with Lincoln County to provide healthcare services to Zdroik at the Lincoln County Jail, and was acting in the course and scope of her employment and under color of state law. *Id.* at ¶ 8. Reimann was aware that Zdroik recently had open-heart surgery. *Id.* at ¶ 16. While at the Lincoln County Jail, Zdroik fell to the ground and was unable to feel or

control his legs. *Id.* at ¶ 20. At least two inmates pushed the red emergency buttons to call for medical assistance for Zdroik. *Id.* Zdroik submitted multiple written request for healthcare services to Reimann and other medical staff at Lincoln County Jail requesting to see a doctor because his hands, arms, feet and legs, chest and face had been going numb. *Id.* at ¶¶ 18-20, 24. Zdroik was being treated by an outside specialist for his condition and was ordered to return to the specialist for additional testing later that month for a TEE test on June 30, 2017, and Reimann was aware of this outside treatment and order for additional testing. *Id.* at ¶¶ 21-23. A reasonable inference is that Reimann was aware of all these facts because she was in possession of Zdroik's medical records and was responsible for his medical care and had discussions with him about his medical conditions. *Id.* at ¶¶ 8, 16.

Zdroik specifically submitted written requests and discussed his medical concerns with Reimann and Lincoln County Jail medical staff that he was being treated by an outside specialist and feared that he would not receive the additional testing as ordered by his outside specialist if he was transferred from Lincoln County Jail prior to obtaining his TEE test. *Id.* at ¶¶ 23-25, 29. Based on Reimann's training and experience working in the jail or prison medical system as well as her discussions with Zdroik and with other Lincoln County jail staff, she knew that if Zdroik was transferred from Lincoln County Jail, that he would not make it to his TEE test, ordered by Dr. Luce on June 30, 2017. *Id.* at ¶ 29. Additionally, based on Reimann's training and experience working in the jail or prison medical system, she knew (1) that Dodge Correctional Institution was located in Waupun, Wisconsin, over 130 miles from Dr. Luce's office in Wausau, Wisconsin; (2) that

the medical staff at Dodge Correctional would not make arrangements to present Zdroik to a medical appointment in Wausau, Wisconsin; and (3) that the medical staff at Dodge Correctional would not schedule Zdroik for a TEE test on or before June 30, 2017, as Zdroik's outside treating specialist, Dr. Luce, had ordered. *Id.* at ¶ 30.

Based on Reimann's training and experience as a medical professional, discussions with Zdroik, and her possession and review of Zdroik's medical file, she knew that: (1) Zdroik's repeated episodes of numbness or tingling in the extremities, as well as dizziness and loss of consciousness are signs of a transient ischemic attacks or mini-strokes and that such mini-strokes indicate an increased risk of a full-blown stroke, *Id.* at ¶ 67; (2) a TEE test is used to check if there are blood clots in the heart or the arteries, which can cause a stroke, *Id.* at ¶ 66; and (3) her failure to conduct cardiology tests or act in manner that she knew would prevent Zdroik from having a TEE test done on or before June 30, 2017, as ordered by Zdroik's outside treating specialist, all created an unreasonable and substantial risk of danger to Zdroik. *Id.* at ¶ 70. Specifically, Reimann knew that if Zdroik was transferred from Lincoln County Jail that medical staff at the receiving facility would not make arrangements to present Zdroik to a medical appointment in Wausau, Wisconsin and also that the medical staff at Dodge Correctional would not schedule Zdroik for a TEE test on or before June 30, 2017, as Zdroik's outside treating specialist, Dr. Luce, had ordered. *Id.* at ¶ 30. Despite knowing that Zdroik would miss his TEE test if he was transferred, Reimann failed to take reasonable steps to abate Zdroik's serious risk of a stroke, including but not limited to (1) placing a medical transfer hold on Zdroik to allow him to stay at the Lincoln County jail an additional 16 days so that he could

complete his TEE test on or before July 30, 2017, as ordered by outside specialist Dr. Luce, (2) provide advanced notice and communicate with the medical staff at the receiving institution to ensure Zdroik could complete his TEE test on or before July 30, 2017, (3) contact and consult with Dr. Luce, or otherwise make alternative arrangements to ensure Zdroik could complete his TEE test on or before July 30, 2017. *Id.* at ¶ 31.

Defendant Reimann had the opportunity, duty and ability to intervene on behalf of Plaintiff, she failed to provide proper and timely medical care or access to medical care to treat Zdroik's serious health problem, failed to follow the orders of an outside medical specialist and acted in a manner which she knew would prevent other medical staff from following the orders of an outside treating specialist, causing Zdroik to suffer an acute ischemic stroke. *Id.* at ¶¶ 72, 74, 77.

On the day Zdroik suffered a stroke, he was transferred to UW Hospital, and examined by stroke specialist Dr. Sattin who performed a TEE test and saw a partially thrombosed left atrial appendage remnant with active thrombosis which he determined caused the stroke. *Id.* at ¶ 54. Had Defendant Reimann taken reasonable steps to reduce the risk of Zdroik suffering a stroke, including providing proper and timely medical care or acting in a manner to allow Zdroik to have a TEE test performed on or before June 30, 2017, as ordered by Zdroik's outside treating specialist, Zdroik would not suffered the acute ischemic stroke, which caused damage to his brain. *Id.* at ¶ 73.

## II.    ARGUMENT

To prevail on his claims for deliberate indifference to his medical needs against all individually named Defendants, Zdroik must prove: (1) that Defendants had actual

knowledge that he was at substantial risk of a stroke; and (2) that Defendants disregarded the risk by failing to take reasonable steps to abate it." *Estate of Johnson v. Robinson*, No. 07-C-0754, 2008 WL 5423950 (E.D. Wis. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). An official's constitutional obligation is not satisfied simply by taking some action; he or she must take reasonable steps under the circumstances to abate the risk. *Borello v. Allison*, 446 F.3d 742, 749 (7th Cir. 2006). Here, Zdroik's claims against all Defendants arise out of a logically related series of connected occurrences. All individually named defendants are alleged to have actual knowledge that Zdroik was at substantial risk of a stroke, and all individually named Defendants both individually and collectively disregarded that risk by failing to take reasonable steps to abate it. The alleged deliberate indifference to Zdroik's serious medical needs are all part of the same series of logically related occurrences. These acts of the Defendants are not isolated incidents that share no causal or common link among them. Rather, these series of connected occurrences are logically related in that there is a cause and effect relationship between the occurrences, and the occurrences share operative facts and similarities with respect to time, witnesses and evidence, all occurred within a less than one month period of time and resulted in the same single harm of Zdroik suffering a stroke on July 11, 2017.

The fact that Zdroik suffered a stroke shortly after being transferred from the facility where the Defendant Reimann was responsible for his medical care, instead of suffering a stroke in the facility where the Defendant's acts of deliberate indifference occurred does not support severance of the logically related claims in the present case

into two or three separate cases. Under Rule 20, multiple defendants may be joined in one action if both (a) the plaintiffs' claims against them "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (b) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Defendant Reimann does not dispute that Zdroik's claim against all individually named Defendants share a common question of law, and thus satisfies the second prong of the Rule 20 analysis. "In each instance, plaintiff will have to prove that the defendant was deliberately indifferent to his serious medical needs." *Estrada v. Reed*, No. 07-C-442-C, 2007 WL 5614115, at *1 (W.D. Wis. Nov. 3, 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Instead, Defendant Reimann's Motion to Sever challenges the first prong of the Rule 20 analysis: whether the Plaintiff's claims against the Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2).

District courts interpret Rule 20 liberally to achieve its purpose and exercise "wide discretion" in deciding whether to sever a party. *Lozada v. City of Chicago*, No. 10 C 1019, 2010 WL 3487952, at *2 (N.D. Ill. Aug. 30, 2010) (quoting *Gorence v. Eagle Food Ctrs., Inc.*, No. 93 C 4862, 1996 WL 734955, at *3 (N.D.Ill.Dec.19, 1996)); *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001). Where there is a common question of fact or law, cases may be joined in the interests of efficiency, but consolidation is by no means a necessity. *Bailey v. N. Tr. Co.*, 196 F.R.D. 513, 517 (N.D. Ill. 2000) (citing *Kelly v. Kelly*, 911 F.Supp. 66, 69 (N.D.N.Y.1996)).

> Although such common issues are a prerequisite to consolidation, the mere existence of these issues does not require a joint trial as a matter of course.

6

Instead, the Court must balance the savings of time and effort gained through consolidation against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions.

*Bailey*, 196 F.R.D. at 517 (quoting *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D.C. Del. 1981)).

Allowing Zdroik's claim of deliberate indifference to his serious medical needs to proceed against all individually named Defendants in a single suit is consistent with the purpose of Rule 20, "which is 'to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Bailey*, 196 F.R.D. at 515; *Lozada*, No. 10 C 1019, at *2 (quoting *Gorence*, No. 93 C 4862, at *3). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966); *see also Mayer Paving & Asphalt Co. v. Gen. Dynamics Corp.,* 486 F.2d 763, 771 (7th Cir. 1973) (citation omitted).

Rule 20 is "broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes." *UWM Student Ass'n v. Lovell*, 2018 WL 1940531, at *7 (7th Cir. Apr. 25, 2018).

Zdroik's claims against all individually named Defendants arise out of the same series of logically related transactions or occurrences and present common issues of law or fact. The fact that Zdroik suffered a stroke in one of the three facilities in which he was confined in during less than a one month period of time does not destroy the logical relatedness of the series of occurrences alleged in his complaint. There is a cause and effect relationship between the occurrences, and the occurrences share operative facts and

7

similarities with respect to time, witnesses and evidence. Requiring Zdroik to bring the same claims against two or three groups of defendants in two or three separate suits would require overlapping proof of facts and duplication of testimony from the same witnesses in each case. "[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court." Wright, Miller, & Kane, 7 *Fed. Prac. & Proc. Civ.* § 1653 (3d ed. 2008).

In ascertaining whether a particular factual situation constitutes series of transactions or occurrences for purposes of Rule 20, a case-by-case approach is generally pursued because no hard and fast rules have been established to determine whether a set of events is sufficiently logically connected to comprise a "series" of transactions which would allow the claims against multiple defendants to be properly joined in the same action. *See* Wright, Miller, & Kane, 7 *Fed. Prac. & Proc. Civ.* § 1653 (3d ed.); *Bailey*, 196 F.R.D. 513 at 515 (citing *Gorence*, No. 93 C 4862, at *3 (citing *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) and *Grayson v. K–Mart Corp.*, 849 F.Supp. 785, 787 (N.D.Ga.1994)). Temporal proximity of the events is a factor, but is not the only consideration." *Johnson v. Kruse*, No. 17-cv-237, 2018 WL 905344, at *2 (S.D. Ill. Feb. 15, 2018).

> "Transaction" and "occurrence" are interpreted broadly and all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. Courts determine the logical relatedness of separate occurrences by considering a variety of factors, including whether the alleged conduct occurred during the same general time period, involved the same people and similar

conduct, and implicated a system of decision-making or widely-held policy[.]

*Robinson v. Dart*, No. 13 C 1502, 2014 WL 222711, at *2 (N.D. Ill. Jan. 21, 2014) (internal quotation marks and citations omitted).

Defendant Reimann asks this Court to sever her from this suit, asking this Court to liken Zdroik's case to *Robinson, Wilson, Lozada, Baily, Ramos* or *Carthage*. It is important to note that all of these cases, with the exception of *Carthange*, involve multiple plaintiffs making multiple claims against multiple individuals or defendants. *Robinson* involved four plaintiffs who brought claims against two defendants related to two different types of medical injuries. *Wilson* involved six plaintiffs who brought claims against four defendants related to illegal search and seizure claims, additionally two plaintiffs brought state law malicious prosecution claims, three of the plaintiffs brought excessive force claims and another group of plaintiffs brought false arrest claims. The *Wilson* court held that all of plaintiffs' claims arose out of the same transaction or series of transactions. *Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *2 (N.D. Ill. May 12, 2005). *Lozada* involved 15 different plaintiffs who brought eight claims ranging from racketeering to intention infliction of emotional distress against two defendants. *Baily* involved five plaintiffs who each brought employment discrimination claims against their employer. While only the employer was named as a defendant, "the employment actions complained of were made by different section managers and team leaders at different times over a period of at least fifteen months" and the types of adverse employment actions complaint of varied from "unequal pay, retaliation, unfair disciplinary warnings, increased job duties, job threats, discrimination in performance evaluations, wrongful

9

termination, denial of promotional opportunities, and denial of training." *Bailey*, 196 F.R.D. at 516. *Ramos* involved a putative class action against four defendants involving claims for unfair and deceptive acts and practices, breach of implied warranty of merchantability, negligence, and unjust enrichment. *Ramos v. Playtex Prod., Inc.*, No. 08 CV 2703, 2008 WL 4066250, at *1 (N.D. Ill. Aug. 27, 2008). None of the above cases of *Robinson, Wilson, Lozada, Baily, Ramos* or involve a single plaintiff or claim for a single injury, let alone a single claim and a single injury as alleged in Zdroik's case.

Defendant Reimann also looks for support for her motion to sever her from this suit in this Court's ruling in *Carthage v. Malcomson*, No. 16-CV-326, 2017 WL 1383731 (E.D. Wis. April 18, 2017). While *Carthage* does involve a single plaintiff it includes multiple claims for multiple injuries and is otherwise distinguishable from Zdroik's case. In *Carthage*, a prisoner incarcerated at Dodge Correctional Institution brought a section 1983 claim under the Fourteenth Amendment to the U.S. Constitution against Brown County Sheriff's Department employees for their inadequate treatment for his medical condition while he was at the Brown County Jail, specifically regarding his need for dialysis treatment and causing him to be taken off of a kidney transplant waiting list. *Id.*, at *1-2; Order, ECF No. 14, at 2, *Carthage*, No. 16-CV-326 (E.D. Wis. Dec. 20, 2016). Carthage also asserted separate section 1983 and 1985 claims under the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution against Dodge Correctional wardens and security directors for their failure to intervene to prevent alleged violations of his constitutional rights, based on the conditions of his confinement at Dodge, specifically being "excessively shackled and restrained with electrical shock monitors while being

transported to medical appointments …. harassed and ridiculed… [and] subjected to baseless lockdowns and denied access to the law library." *Id.*, at \*1; Second Amended Complaint, ECF No. 26, at 3-5, *Carthage*, No. 16-CV-326 (E.D. Wis. April 3, 2017).

In *Carthage*, this Court required the plaintiff to bring his claims against the Brown County Jail defendants in one lawsuit and his claims against the Dodge Correctional Institution defendants in a separate lawsuit because the claims were improperly joined. *Carthage,* 2017 WL 1383731 at \*1. The Court reasoned that the claims were improperly joined in *Carthage* because the "claims against Dodge officials share[d] no operative facts or legal standards with the claims against the officers at Brown County Jail." *Id.* Additionally, the claims against Brown and Dodge officials did not "arise from the same 'transaction' or 'occurrence'" as there was no "common thread tying all the asserted claims together." *Id.*

This Court instructed Carthage that "to join multiple defendants in a single action, Rule 20 requires that the plaintiff assert at least one claim against all of them 'arising out of the same transaction, occurrence, or series of transactions or occurrences' and that 'any question of law or fact common to all defendants will arise in the action.'" *Id.;* Fed. R. Civ. P. 20(a)(2). Zdroik has done exactly that in his Second Amended Complaint. He has asserted one claim for deliberate indifference based on the denial and delay of medical care against all individually named Defendants. These claims against all of the individually named Defendants share the exact same legal question. Additionally, Zdroik's claims against the Lincoln County, Vilas County and Dodge Correctional

medical staff arise from the same series of logically related occurrences all resulting in Zdroik suffering an acute ischemic stroke on July 11, 2017.

Zdroik's case is more analogous to *Estrada v. Reed*, No. 07-C-442-C, 2007 WL 5614115 (W.D. Wis. Nov. 3, 2007) and *Terry v. Spencer*, 888 F.3d 890 (7th Cir. 2018).

In *Estrada* a prisoner brought section 1983 deliberate indifference claims against five different defendants related to five different instances of deliberate indifference to his medical needs including (1) failure to take reasonable steps to ensure his vital signs were properly monitored, (2) failure to allow him to have a table and chair in his cell as ordered by his outside treating specialist, (3) failure to allow him to use his walking stick and wheelchair in the SHU, (4) failure to provide him physical therapy to recover from his stroke, and (5) failure to provide a splint for his painful finger, all spanning over a one and a half year period. *Estrada*, No. 07-C-442-C (W.D. Wis. Nov. 3, 2007); Opinion and Order, ECF No. 6, at 3-9, *Estrada*, No. 07-C-442-C (W.D. Wis. Sept 17, 2007). In applying Rule 20 to defendant's Motion to Sever, the court held:

> [P]laintiff's claims against all of the defendants are properly raised in a single lawsuit. The allegations in plaintiff's complaint allow an inference to be drawn that he suffered multiple negative physical effects from a stroke he suffered on April 30, 2005, and that the various defendants in this case failed in one way or another to attend to his need for treatment, rehabilitation or preventive care. Thus, plaintiff's right to relief against each defendant arises out of the same occurrence or series of occurrences.

*Estrada*, No. 07-C-442-C at *2 (W.D. Wis. Nov. 3, 2007).

In *Terry* the Seventh Circuit Court of Appeals reversed the district court for dismissing a complaint in part based on the plaintiff joining unrelated defendants and unrelated claims into a single complaint. In *Terry*, a prisoner filed a section 1983 deliberate

indifference to serious medical needs claim against officials at two different prisons based on the failure of officials at the first prison to treat a medical condition he suffered from at the first prison and the failure of officials at the second prison to treat the exact same medical condition he continued to suffer from when he was transferred to the second institution. In both prisons, he made repeated requests for treatment and to be referred to a specialist to remove a tennis ball-sized growth on the back of his neck and head which caused pain and blurred vision. Medical staff at both prison facilities allegedly failed to provide medical care. Merit Review Order, ECF No. 7, at 1, *Terry*, No. 17-CV-01079 (C.D. Ill. April 27, 2017). Terry also included a second claim against different officials at the second prison for interference with his legal mail. The Seventh Circuit Court of Appeals held that "[t]he two sets of claims are against different defendants, but they belong in the same suit because they arise out of the same set of connected transactions. Joining these related claims in one suit is not the "scattershot" litigation strategy we have criticized in the past." *Terry*, 888 F.3d 890, 894 (7th Cir. 2018).

*Terry* is more on point to Zdroik's case than *Carthage* in that *Terry* involves a section 1983 deliberate indifference to serious medical needs claim against medical staff at one prison for their failure to treat his medical need, and against different medical staff at the second prison he was transferred to for their *same* failure to treat his *same* medical need. *Terry* also allowed greater latitude in joining multiple defendants than Zdroik seeks in his present case, in that *Terry* allowed two claims against two different groups of defendants – deliberate indifference to his medical needs against medical staff at two

separate prisons and interference with his right to file suite with separate defendants at one of the prisons. Zdroik has alleged one single claim against all defendants.

The *Terry* court found that the claims arose out of the same series of occurrences because they were all premised on the same failure to provide the plaintiff with adequate medical treatment for the same condition during the same general period of time, despite the claims being on different specific dates, against multiple defendants, and located in different prisons. Zdroik asks this Court to do the same here.

The logical relation between the series of transactions or occurrences in Zdroik's case is just as strong, if not stronger than in *Estrada* and *Terry*. The logical connection in the series of occurrences alleged by Zdroik against all defendants are that Lincoln County medical staff were deliberately indifferent by: (1) not providing adequate medical care needed to avoid a serious risk of Zdroik having a stroke, (2) acting in a manner which prevented Zdroik from receiving necessary medical care as ordered by his outside treating specialist, and (3) not placing a medical transfer hold on Zdroik or preventing his transfer when they knew that the medical staff at the subsequent facilities would be likewise deliberately indifferent. Vilas County medical staff were likewise deliberately indifferent to Zdroik's exact same medical needs, in the same manner, the same general time period and resulting in the same harm by: (1) not providing adequate medical care needed to avoid a serious risk of Zdroik having a stroke, (2) acting in a manner which prevented Zdroik from receiving necessary medical care as ordered by his outside treating specialist, and (3) not placing a medical transfer hold on Zdroik or preventing his transfer when they knew that the medical staff at the subsequent facilities would be

likewise deliberately indifferent, just as Lincoln County medical staff knew they would be. Dodge Correctional medical staff were likewise deliberately indifferent to Zdroik's exact same medical needs, in the same manner, the same general time period and resulting in the same harm by: (1) not providing adequate medical care needed to avoid a serious risk of Zdroik having a stroke, (2) acting in a manner which prevented Zdroik from receiving necessary medical care as ordered by his outside treating specialist, just as Lincoln County medical staff and Vilas County medical staff knew they would be. Indeed shortly after arriving at Dodge Correctional, Zdroik suffered a stroke July 11, 2017.

### III.    CONCLUSION

The allegations against all individually named Defendants of deliberate indifference to Zdroik's serious medical needs are all part of the same series of logically related occurrences, in that they all stem from their knowledge that Zdroik was at substantial risk of a stroke, and that they all disregarded the risk by failing to take reasonable steps to abate that serious risk. These acts of the Defendants are not isolated incidents that share no causal or common link among them. Rather, these series of occurrences are logically related in that there is a cause and effect relationship between the occurrences, and the occurrences share operative facts and similarities with respect to time, witnesses and evidence, all occurred within a less than one month period of time and all resulted in the same single harm of Zdroik suffering a stroke on July 11, 2017. In addition to Zdroik meeting the requirements for joining all Defendants in this case, none

of the factors raised by Defendant Riemann outweighs the judicial efficiency to be gained by trying the deliberate indifference claims against all Defendants together in one suit.

Wherefore, the Plaintiff respectfully requests that Defendants Lincoln County and Marla Riemann's Motion to Sever be denied.

Respectfully submitted,

Dated: July 11, 2018

 /s/ John H. Bradley
John H. Bradley
Strang Bradley, LLC
33 E. Main St., Ste. 400
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com

Attorneys for Plaintiff